## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

DONNA CANTRELL, as Next    )
Friend of GARY LYONS,    )
   )
      **Plaintiff,**    )
   )    **Case No. 16-CV-400-JHP**
**v.**    )
   )
MISTY JOHNSON, in her    )
individual capacity, *et al.*,    )
   )
   )
      **Defendants.**    )

## OPINION & ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants Misty Johnson and the Board of County Commissioners of Latimer County (Dkt. 66). After consideration of the briefs, and for the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

On July 29, 2016, officials with the Latimer County Sheriff's Office ("LCSO"), along with other state and local law enforcement officials, conducted a raid on the shop and residence at the ranch property of the brother of Gary Lyons ("Mr. Lyons"). (Dkt. 66, at 1 (Defendants' Undisputed Fact No. 1)). The raid was conducted pursuant to two search warrants signed by a state District Court Judge. (Dkt. 66-5 (Search Warrants)). Law enforcement officials were searching for evidence of illicit drug possession. (*Id.*). Defendant Misty Johnson ("Deputy

Johnson"), then a Deputy with the LCSO, was assigned to secure and search the shop building and the surrounding area. (Dkt. 66-1 ("Johnson Deposition I"), 50:12-15). Deputy Johnson and other officers in her assigned unit approached the shop building in marked patrol vehicles with lights activated. (Johnson Deposition I, 40:6-18). Several officers were in the patrol vehicle with Deputy Johnson, including Latimer County Deputy Cody Donoley and John Whiteaker, Chief of Police of the Town of Panama. (Johnson Deposition I, 38:20-39:2).[1] Deputy Johnson had been informed that multiple individuals were suspected to be on the property, and that gun violations and narcotic drugs were suspected to be found during the raid. (Johnson Deposition I, 45:20-25).

As Deputy Johnson's vehicle approached the shop building, officers noticed a man standing near the shop building, behind a pickup truck, now identified as Mr. Lyons. (Dkt. 66-2 ("Donoley Decl."), at 2); Dkt. 66-3 ("Whiteaker Decl."), at 2; Dkt. 66-4 ("LCSO Incident Report"), at 26-27). Deputy Johnson advised the officers in her vehicle that she would secure him. (Dkt. 66, at 2 (Defendants' Undisputed Fact No. 4). As the vehicle stopped, Deputy Donoley, Chief

_____

[1] Plaintiff disputes whether a fourth person, trainee Cynthia Hicks, was present in the vehicle with Deputy Johnson. (*See* Dkt. 74, at 2). It is not necessary, however, to determine whether Cynthia Hicks was present in order to decide whether summary judgment is appropriate. Therefore, the Court disregards Cynthia Hicks' statement in making its determination on Defendants' Motion.

Whiteaker, and Deputy Johnson exited the vehicle, with all three yelling words to the effect of, "Police," "law enforcement," and "search warrant." (Donoley Decl., at 2-3; Whiteaker Decl., at 2; LCSO Incident Report, at 26-27). Mr. Lyons denies hearing any officer yelling these statements, but he does not dispute that the officers yelled such statements. (Dkt. 66-7 ("Lyons Deposition I"), 44:21-24; Dkt. 74-5 ("Lyons Deposition II"), 41:1-19).

Deputy Johnson moved toward the pickup, repeatedly shouting at Mr. Lyons, whom she did not know or recognize, to stop and get on the ground. (Johnson Deposition I, 9:13-15; 50:4-7; 52:10-12). Deputy Johnson was particularly concerned that she could not see one of Mr. Lyons' hands and that he could be armed with a weapon. (*Id.* at 53:6-54:13). Despite the order to do so, Mr. Lyons did not get on the ground. (*Id.* at 50:23-51:10; 52:10-12; 55:1-11). Mr. Lyons does not dispute that Deputy Johnson ordered him to get on the ground, although he testified at deposition that he did not hear any such order. (Lyons Deposition I, 44:21-24; 45:23-25). [2]

---

[2] In support of their Motion, the Defendants submitted a Declaration of Officer John Ford, who was present during the raid. (Dkt. 66-12). In the Declaration, Officer Ford states that Mr. Lyons admitted to being non-compliant when Deputy Johnson ordered him to get on the ground. (*Id.*). Following the takedown, Mr. Lyons allegedly stated that he did not want to get on the ground because it was muddy, he did not want to be disrespected, and he was tired of the sheriff's department coming out to the property and searching and disrespecting him. (*Id.* at 1-2).

It is disputed whether Mr. Lyons turned away from Deputy Johnson following her commands, and whether Mr. Lyons began to walk away from Deputy Johnson. (*Compare* LCSO Incident Report, at 27 (Misty Johnson Narrative) ("Gary then turned away from me as if to walk away or run") *and* Lyons Deposition I, 44:1-4 (Q. How did you—and just so I'm straight, at no time did you turn away from her or move from her; correct? A. Yes.")). However, it is undisputed that Mr. Lyons remained standing for approximately twenty seconds as Deputy Johnson approached him. (Lyons Deposition I, 45:11-14).

After Mr. Lyons failed to get on the ground, Deputy Johnson approached Mr. Lyons and performed an "arm bar" technique on Mr. Lyons in order to take him to the ground. (LCSO Incident Report, at 27). [3] Deputy Johnson then

---

Defendants also submit a statement from Officer Ford, which repeats the same statements. (Dkt. 66-13). In Response, Plaintiff disputes that Deputy Johnson issued any commands, and she asserts the Ford Declaration and Statement are inadmissible hearsay. It is unclear whether Plaintiff specifically disputes that Mr. Lyons made those statements. Defendants argue the Ford statement is not hearsay, because it is not offered to prove the truth of the matter asserted, but rather to show that Deputy Johnson issued commands, that Mr. Lyons heard them, and that he failed to comply with them. Because it is not necessary to the determination of Defendant's Motion, the Court will not rely on Officer Ford's statement and therefore will not determine the admissibility of Officer Ford's statement or the extent to which Plaintiff disputes that Mr. Lyons admitted noncompliance with Deputy Johnson's orders on the day of the raid.

[3] In her Response, Plaintiff disputes that Deputy Johnson performed an "arm-bar" technique or that she performed it in accordance with her training. (Dkt. 74, at 4). Plaintiff points out that Deputy Johnson refused to reenact her purported use of the technique during her deposition. (*See* Dkt. 74-2 ("Johnson Deposition II"), 91:9-92:4). However, Deputy Johnson explained she was reluctant to perform the technique at the deposition because she was wearing a dress and therefore uncomfortable with exposing herself while performing the technique. (Johnson

4

handcuffed Mr. Lyons behind his back while on the ground, and as she raised him from the ground, she noticed Mr. Lyons was bleeding from his forehead. (LCSO Incident Report, at 27; Dkt. 66, at 4 (Defendants' Undisputed Fact No. 12)). An ambulance was summoned to Mr. Lyons' aid, but Mr. Lyons refused medical treatment upon its arrival, apart from cleaning the wound and applying a bandage to the wound area. (Dkt. 66-14 (EMS Patient Care Report)). Mr. Lyons was then transported to the Latimer County Jail, where he again refused medical treatment. (Dkt. 66-15 (Jail Entry Log); Dkt. 66-16 (EMS Patient Care Report)). After being bonded out of jail, Mr. Lyons went to his residence. (Dkt. 66, at 5 (Defendants' Undisputed Fact No. 16). Later that morning, Mr. Lyon's girlfriend Donna Cantrell ("Plaintiff" or "Ms. Cantrell") noticed that Mr. Lyons appeared disoriented, and she took him to the Indian Clinic in Talihina, Oklahoma. (Dkt. 66, at 6 (Defendants' Undisputed Fact No. 17)). He was then transferred to Saint Francis Hospital in Tulsa, Oklahoma, where he was determined to have a brain bleed. (*Id.*). Mr. Lyons remained in the hospital for treatment for approximately two weeks. (*Id.*).

---

Deposition II, 91:9-92:4). Moreover, Plaintiff fails to produce any evidence to dispute Deputy Johnson's statement that she performed the arm-bar technique to take down Mr. Lyons. Accordingly, the Court concludes Plaintiff fails to raise a genuine issue with respect to this fact.

Ms. Cantrell filed an Amended Complaint as "Next Friend" of Mr. Lyons on March 28, 2017. (Dkt. 48). In the Amended Complaint, as amended pursuant to the Court's Order adding the Board of County Commissioners of Latimer County ("Board") as a party defendant (Dkt. 50), Plaintiff asserts claims for (1) relief under 42 U.S.C. § 1983 against Deputy Johnson for unlawful use of excessive force, and (2) relief for negligence pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 Okl. Stat. §§ 151 *et seq*., against the Board under a theory of *respondeat superior* for Deputy Johnson's actions. (Dkt. 48, ¶¶ 24-29).[4]

On September 5, 2017, both Defendants filed a Motion for Summary Judgment on Plaintiff's claims against them. (Dkt. 66). Plaintiff filed a Response in opposition on September 15, 2017. (Dkt. 74). Defendants filed a Reply on October 2, 2017. (Dkt. 78). The Motion is fully briefed and ripe for review.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

---

[4] The Amended Complaint identifies "John Does 1-10, in their individual capacities" as party defendants but makes no allegations against these defendants. Moreover, none of these defendants has been identified or served, and the time for service has lapsed. Accordingly, these defendants are properly dismissed from this case.

R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [the nonmovant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Moreover, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).  Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## I.     Real Party in Interest

First, Defendants argue Ms. Cantrell is not the real party in interest and lacks legal authority to bring this suit on behalf of Mr. Lyons as next friend. In response, Mr. Lyons submitted a Notice of Ratification, in which he agrees to authorize continuation of the action and agrees to be bound by the lawsuit's result. (Dkt. 73). With the Notice of Ratification having been filed, Defendants concede that its argument is moot. (Dkt. 78, at 5 n.2). Accordingly, the Court finds Defendant's argument regarding the real party in interest to be moot. *See* Fed. R. Civ. P. 17(a)(3); 12 Okl. St. § 2017(A).

## II.    Excessive Force

Ms. Cantrell asserts a claim against Deputy Johnson pursuant to 42 U.S.C. § 1983 for unlawful use of excessive force against Mr. Lyons. (Dkt. 48, ¶¶ 24-27). Claims of excessive force committed by law enforcement during an investigatory stop or other "seizure" of a free citizen are evaluated under the Fourth Amendment to the United States Constitution and its "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Accordingly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (citation omitted). The reasonableness determination must account for the "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances that police officers must often make. *Id.* at 397. However, the reasonableness inquiry in an excessive force case is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id. See Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) (en banc) ("the excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case.").

Here, it is undisputed that the nature of the interaction between Mr. Lyons and Deputy Johnson was that of an investigative detention. *See Cortez*, 478 F.3d at 1115 (describing types of police/citizen encounters).

> An investigative detention is a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause. An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. For an officer to have reasonable suspicion to seize an individual, the officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Id.* (internal citations and quotation marks omitted). The Tenth Circuit has "recognized that, given evidence of officer safety concerns, officers may in appropriate circumstances take steps to protect their personal safety and maintain the status quo" during an investigative stop." *Id.* at 1130 (citing *Gallegos v. City of Colorado Springs,* 114 F.3d 1024, 1030-31 (10th Cir.1997); *United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir. 1993)). Although investigative stops are normally non-intrusive, the Tenth Circuit has "indicated that law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause." *Id.* (citing *Perdue,* 8 F.3d at 1463).

Moreover, the Tenth Circuit has held that use of an arm-bar take-down maneuver on a suspect during an investigative stop was not unreasonable as a matter of law when the officer reasonably believed her safety was in danger. *Gallegos*, 114 F.3d at 1031. At the same time, officers involved in an investigative stop are "permitted to use only as much force as [is] necessary to secure their own safety and maintain the status quo." *Cortez*, 478 F.3d at 1131 (citing *United States v. Hensley*, 469 U.S. 221, 235 (1985)).

Here, Plaintiff alleges Mr. Lyons was subjected to excessive force when Deputy Johnson used an arm-bar take-down maneuver, which caused Mr. Lyons to hit his head on the ground. Deputy Johnson argues summary judgment on the issue of excessive force is appropriate because, under the circumstances she was faced with on July 29, 2016, it was reasonable for her to use an arm-bar technique to take Mr. Lyons to the ground in order to secure him. Specifically, Deputy Johnson argues her actions were objectively reasonable, because she arrived on the property pursuant to a search warrant, in order to search for evidence of illegal activity.[5] When officers spotted Mr. Lyons outside the shop building, several

---

[5] In her Response, Plaintiff disputes the validity of the search warrant, asserting that the Defendants were unable to produce a legitimate basis to support the probable cause affidavit. (*See* Doc. No. 74, at 1). However, Plaintiff has not produced any evidence to support this assertion, and the search warrants are facially valid, having been issued by a District Court

11

officers shouted that they were law enforcement and that they had a search warrant. Deputy Johnson shouted at Mr. Lyons to get on the ground, but Mr. Lyons failed to do so. Deputy Johnson was unable to see one of Mr. Lyons' hands. Deputy Johnson needed to ensure her own and other officers' safety by securing Mr. Lyons, who may have been involved in illegal activity on the property and who may have been armed. Accordingly, Deputy Johnson argues she used a reasonable amount of force necessary to get Mr. Lyons on the ground and handcuff him as part of an investigative detention.

In support, Deputy Johnson relies on an unpublished Tenth Circuit opinion, *Chidester v. Utah County*, 268 F. App'x 718 (10th Cir. 2008). In *Chidester*, a SWAT Team was in the process of executing a search warrant on a house, in search of methamphetamine and weapons, among other items. *Id.* at 721. The plaintiff, who lived next door to the target residence, ran outside to investigate noise from the flash-bang grenades the officers deployed. *Id.* at 722. As the plaintiff turned to go back inside, one of the officers spotted the plaintiff and ran towards him, shouting at the plaintiff to put his hands in the air and to get on the ground. *Id.* at 723. The plaintiff put his hands in the air but found it difficult to get

Judge. (*See* Dkt. 66-5 (Search Warrants)). In any event, Plaintiff's assertion regarding probable cause to search the ranch property is irrelevant to the sole claim of excessive force, as the Amended Complaint makes no allegation challenging the validity of the search warrants.

on the ground while keeping his hands in the air. *Id.* The plaintiff repeatedly shouted, "I'm not resisting, I'm not resisting." *Id.* The officer then tackled the plaintiff, knocking the wind out of him and putting his face in the rocks and dirt. *Id.*

The Tenth Circuit in *Chidester* recognized that, viewed objectively, the officer had to make a split-second decision in a high-stress situation in which he was confronted with an unknown person, who may have been coming from or going to the suspect house, and who may have been armed. *Id.* at 727. On the other hand, the court noted that the police were aware of the plaintiff's residence before the raid and the plaintiff was standing on the other side of his residence from the target residence. Further, the plaintiff "did not resist arrest or attempt to flee, put his hands in the air when ordered to by [the officer], and kept them in the air the entire time while yelling that he wasn't resisting." *Id.* "Although the situation was threatening, [the officer] was armed with an automatic weapon and, according to [the plaintiff's] version of the facts, faced with a compliant suspect whose hands were above his head. Under these facts, engaging [the plaintiff] in such a physical manner was not reasonable." *Id.* The court further noted that the facts presented "an exceedingly close case." *Id.* at 727.

In this case, as in *Chidester*, Deputy Johnson arrived at the ranch property as part of a law enforcement team executing search warrants to search for evidence of controlled dangerous substances. (Dkt. 66-5 (Search Warrants); LCSO Incident Report, at 26-27). When Deputy Johnson spotted Mr. Lyons, she did not know who Mr. Lyons was or whether he was armed, and she could not see one of his hands. (Johnson Deposition I, 53:6-54:2). Deputy Johnson and the other officers identified themselves as law enforcement with a search warrant. Deputy Johnson yelled at Mr. Lyons to get on the ground, but Mr. Lyons did not comply. Under those circumstances, as in *Chidester*, the Court concludes a reasonable officer would find the situation threatening and would reasonably perceive Mr. Lyons as a potential threat to her safety. Accordingly, it would be reasonable in those circumstances, to secure Mr. Lyons in a physical manner. Deputy Johnson performed an arm-bar take-down maneuver on Mr. Lyons to take him to the ground. Under the circumstances presented, viewed in a light most favorable to Plaintiff, use of the maneuver was reasonable as a matter of law.

While the court in *Chidester* ultimately concluded the officer's use of force was not reasonable, the Court here finds that the situation is not so exceedingly close. In *Chidester*, the court concluded the officer was faced with a compliant suspect. Here, by contrast, Mr. Lyons was not compliant with Deputy Johnson's

order to get on the ground. Importantly for purposes of summary judgment, Mr. Lyons presents no evidence to contradict Deputy Johnson's testimony that she ordered him to get on the ground. Rather, he testified in his deposition that he did not hear the orders. (*See* Lyons Deposition I, 44:21-24 ("Q. Now do you know for a fact that Ms. Johnson, or no other officer told you to stop, or get on the ground, or you're just saying you didn't hear them? A. I didn't hear. Didn't have time to do it."); *id.* at 45:23-25 ("Q. [Deputy Johnson] didn't say anything or you didn't hear her say anything? A. I didn't hear her say a word.")). In the excessive force analysis, the Court is obliged to consider the perspective of a reasonable officer, not that of the suspect. Under these circumstances, Deputy Johnson's take-down of Mr. Lyons was an objectively reasonable use of force and no constitutional violation occurred. Although a genuine issue of fact remains as to whether Mr. Lyons turned and began to walk away from Deputy Johnson (*see* Dkt. 78, at 4), the Court concludes this issue is irrelevant to a determination regarding excessive force, because the uncontroverted evidence demonstrates Mr. Lyons did not comply with Johnson's commands to get on the ground.

In her Response, Plaintiff compares the facts of this case to those presented in *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012). In *Morris*, the Tenth Circuit affirmed the denial of summary judgment on an excessive force claim. *Id.* at 1195-

96.  The police in *Morris* responded to a domestic disturbance at a residence.  *Id.* at 1189.  William Morris arrived at the scene after several police officers had secured it, and he spoke with other individuals outside the residence.  *Id.* at 1190.  When one of the individuals approached him, Morris put up his hands and backed toward the police officers, who then lunged at Morris and threw him forcefully to the ground.  *Id.*

In that instance, the court reviewed the three *Graham* factors—the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight—and found two of the three factors favored Morris.  First, the court assumed that the officer had probable cause to arrest Morris for misdemeanor assault, which weighed in the officer's favor.  *Id.* at 1195.  Second, Morris backed into the officers with his hands raised, thereby posing "little immediate threat to the safety of the officers" or bystanders, and none of the officers gave Morris any warning or told him to calm down, which weighed heavily in Morris' favor.  *Id.* at 1196.  Third, Morris was not resisting arrest or attempting to flee, because he was backing *toward* the officers when they grabbed him and was not struggling with the officers as they took him to the ground.  *Id.*

Based on these factors, the Tenth Circuit found the officers had violated Morris'

constitutional right to be free from excessive force.

Plaintiff argues that this case is even more compelling than *Morris*, because

here all of the *Graham* factors support a finding of an excessive force violation.

That is, Mr. Lyons was not suspected of committing any crime, he did not pose a

threat to anyone, and he was not actively attempting to evade arrest or flee the

scene. To the contrary, the Court finds the three factors weigh in Deputy

Johnson's favor. First, even though Mr. Lyons was himself not suspected of

committing a crime, law enforcement was at the ranch property to execute search

warrants for evidence of possession of illicit drugs, which may be serious crimes.

Plaintiff does not attempt to argue that Deputy Johnson had no authority to carry

out an investigative detention of Mr. Lyons under those circumstances. *Cf. Davis

v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) ("Although 'an officer can effect

an arrest for even a minor infraction, [a] minor offense—at most—support[s] the

use of minimal force.'") (quoting *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir.

2016)).

Second, as discussed above, in the high-stress situation of executing a search

warrant, a reasonable officer would perceive Mr. Lyons as an immediate threat,

particularly when that officer could not see one of Mr. Lyons' hands. Third, the

uncontroverted evidence indicates Mr. Lyons was not compliant with Deputy Johnson's orders to get on the ground. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) (holding the failure to comply with officer's lawful orders to get on the ground can be seen as a "form of resisting arrest."). Plaintiff offers no evidence that Mr. Lyons was compliant in any way or attempting to comply with Deputy Johnson's orders, and no reasonable juror could find that he was compliant with Deputy Johnson's orders. Accordingly, all three *Graham* factors weigh in Deputy Johnson's favor. Under these circumstances, an arm-bar take-down of a non-compliant individual was not disproportionate to the resistance encountered. For the reasons explained above, this case is unlike *Morris*, and therefore *Morris* does not govern the issue of excessive force in this case.

Finally, Plaintiff's testimony that he did not hear Deputy Johnson's orders and that he did not turn away from Deputy Johnson, taken as true, is insufficient to create a justiciable question of fact as to whether Deputy Johnson used excessive force against Mr. Lyons. Plaintiff presents no evidence from which a jury could conclude that Deputy Johnson did not order Mr. Lyons to get on the ground or that Mr. Lyons was compliant with that order. Accordingly, no reasonable juror could find that Deputy Johnson's use of force was excessive. Accordingly, summary judgment is appropriate on this issue.

### III. Qualified Immunity

Deputy Johnson also contends she is entitled to qualified immunity from personal liability for the § 1983 excessive force claim alleged against her in this case. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, in a § 1983 action in which the affirmative defense of qualified immunity from liability is at issue, the plaintiff bears the burden to show (1) the defendant's conduct violated his constitutional rights, and (2) those rights were clearly established at the time of the defendant's alleged misconduct. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

As explained above, Plaintiff has failed to demonstrate Deputy Johnson's conduct violated Mr. Lyon's Fourth Amendment rights governing excessive force claims by using an arm-bar technique to take Mr. Lyons to the ground. Plaintiff's failure to satisfy the first prong of the qualified immunity analysis renders it unnecessary for the Court to consider whether Plaintiff satisfied his burden under

the second prong. *See Hinton v. City of Elwood*, 997 F.2d 774, 780 (10th Cir. 1993).

## IV.    Defendant Board

The Board argues it is entitled to summary judgment as to Plaintiff's state law negligence claim premised on the alleged use of excessive force by Deputy Johnson against Mr. Lyons. The Board correctly argues Oklahoma law is analogous to the standard used in federal excessive force claims—one of "objective reasonableness" under the circumstances. *See Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 230 P.3d 869, 880 (Okla. 2010). The Oklahoma Supreme Court in *Morales* addressed a negligence claim such as Plaintiff's and held, "A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." *Id.*

Applying this standard, the Court concludes as a matter of law that Deputy Johnson's use of force against Mr. Lyons was objectively reasonable, for the reasons explained above with respect to Plaintiff's § 1983 claim. The maneuver used to secure Mr. Lyons is one approved and taught by the Oklahoma Council on Law Enforcement Education and Training ("CLEET"). (*See* Johnson Deposition I,

84:9-85:24).  Deputy Johnson's use of this technique on Mr. Lyons after he failed to comply with her orders, whether he heard them or not, was objectively reasonable under the circumstances Deputy Johnson faced.  Deputy Johnson testified at deposition that she performed the arm-bar maneuver as she had been trained by CLEET, and Plaintiff presents no evidence to contradict this testimony. Accordingly, the Board is entitled to summary judgment on Plaintiff's state law negligence claim with respect to Deputy Johnson's actions.

## CONCLUSION

For the reasons outlined above, Defendants' Motion for Summary Judgment (Doc. No. 66) is **GRANTED**.

**IT IS SO ORDERED** this 16th day of November, 2017.


James H. Payne
United States District Judge
Eastern District of Oklahoma